1        IN THE UNITED STATES DISTRICT COURT
              MIDDLE DISTRICT OF FLORIDA
2                   TAMPA DIVISION

3

4    UNITED STATES OF AMERICA,        )
                                       )
5                 Plaintiff,          )
                                       )
6                                      )  Case No.
          vs.                         )  8:18-CR-00234-MSS-SPF
7                                      )
                                       )
8    CHRISTOPHER BRIAN COSIMANO,       )
     et al.,                          )
9                                      )
                  Defendants.         )
10

11
     _____
12
                     STATUS CONFERENCE
13       BEFORE THE HONORABLE MARY S. SCRIVEN
              UNITED STATES DISTRICT JUDGE
14
                     JULY 18, 2018
15                   10:05 A.M.
                     TAMPA, FLORIDA
16   _____

17

18

19

20

21        Proceedings recorded by mechanical stenography,
     transcript produced using computer-aided transcription.
22   _____

23            DAVID J. COLLIER, RMR, CRR
              FEDERAL OFFICIAL COURT REPORTER
24         801 NORTH FLORIDA AVENUE, 7TH FLOOR
                 TAMPA, FLORIDA  33602
25

```
1   APPEARANCES:

2

3   FOR THE GOVERNMENT:

4
            Carlton Curtiss Gammons
5
            Natalie Hirt Adams
6
            United States Attorney's Office
7
            400 North Tampa Street, Suite 3200
8
            Tampa, Florida  33602
9
            (813) 274-6000
10

11  FOR THE DEFENDANT CHRISTOPHER BRIAN COSIMANO:
12
            Bjorn Erik Brunvand
13
            J. Jervis Wise
14
            Bjorn E. Brunvand, PA
15
            615 Turner Street
16
            Clearwater, Florida  33756
17
            (727) 446-7505
18

19

20  FOR THE DEFENDANT MICHAEL DOMINICK MENCHER:
21
            Anne F. Borghetti
22
            Anne F. Borghetti, PA
23
            12211 49th Street North, Suite 1
24
            Clearwater, Florida  33762-4300
25
            (727) 502-0300
```

1  **APPEARANCES (continued)**

2

3  **FOR THE DEFENDANT ALLAN BURT GUINTO:**

4

5          *Darrin E. Johnson*

           The Law Office of Darrin E. Johnson, PLLC

6          3030 Starkey Boulevard

7          New Port Richey, Florida  34655

8          (727) 261-4379

9

10

11  **FOR THE DEFENDANT ERICK RICHARD ROBINSON:**

12          *David E. Little*

13          Brown & Doherty

14          450 Carillion Parkway, Suite 120

15          St. Petersburg, Florida  33716

16          (727) 299-0099

17

18  **FOR THE DEFENDANT CODY JAMES WESLING:**

19          *D. Todd Doss*

20          Federal Public Defender's Office

21          201 South Orange Avenue, Suite 300

22          Orlando, Florida  32801-3417

23          (407) 648-6338

24

25

```
 1                    P R O C E E D I N G S

 2                    - - - o0o - - -

 3          THE COURT:  Good morning.  Call the case, please.

 4          COURTROOM DEPUTY:  Yes, Your Honor.

 5          Court calls Case Number 8:18-CR-234-T-35MAP, the

 6   United States of America versus Cosimano, et al.

 7          Counsel, please state your name for the record,

 8   beginning with counsel for the Government.

 9          MR. GAMMONS:  Good morning, Your Honor.

10   Carlton Gammons for the United States.  Also seated at

11   counsel table is A.U.S.A. Natalie Adams.

12          THE COURT:  Good morning.

13          For the defense?

14          MR. BRUNVAND:  Good morning, Your Honor.

15   Bjorn Brunvand along with Jervis Wise on behalf of

16   Mr. Cosimano.

17          MS. BORGHETTI:  Good morning, Your Honor.

18   Anne Borghetti on behalf of Michael Mencher.

19          MR. JOHNSON:  Good morning, Your Honor.

20   Darrin Johnson covering for Ben Stechschulte for Mr. Guinto.

21          MR. LITTLE:  Good morning, Your Honor.

22   David Little covering for Jeff Brown on behalf of Mr. Erick

23   Robinson.

24          MR. DOSS:  Good morning, Your Honor.  Todd Doss on

25   behalf of Cody Wesling.
```

```
 1              THE COURT:  Good morning, Counsel.

 2              I set this for status so that we can sort of get a

 3    handle on where the case is going and at what speed.

 4              I have spoken with Judge Honeywell.  She advises

 5    that if you're running a little late she'll hold her hearing

 6    so you can stay in place until we get this done,

 7    Mr. Brunvand.

 8              MR. BRUNVAND:  Thank you, Your Honor.

 9              THE COURT:  I guess the first thing is that there

10    is a pending consideration of whether the Government is

11    going to seek the death penalty in this case, which I

12    understand is supposed to be heard sometime in August;

13    is that right?

14              MR. GAMMONS:  Yes, Your Honor.  Currently

15    A.U.S.A. Adams and I are planning to go to D.C. and

16    Mr. Brunvand is going to make a mitigation presentation

17    before the Capital Case Committee regarding Mr. Cosimano.

18              For the Court's information, the Government has

19    requested what's called an expedited no seek with regard --

20              THE COURT:  That used to be a secret?

21              MR. GAMMONS:  At this time we don't have a -- in

22    speaking with the folks in D.C., it sounds like they say

23    conservatively it will be two months before we have an

24    opinion from -- or a recommendation -- not a recommendation,

25    a decision from the Attorney General whether the death
```

1    penalty is going to be sought, but it really is a black box,

2    as the capital case trial attorney has explained, that

3    there's no real timeline on when the Attorney General will

4    make the final decision, but I'm told best case scenario

5    approximately two months.

6              THE COURT:  And if one were to seek an expedited

7    no seek, would that change that time frame?

8              MR. GAMMONS:  No, Your Honor.

9              THE COURT:  Two months from today?

10             MR. GAMMONS:  Two months from about a week ago.

11             THE COURT:  If this is not going to proceed as a

12   capital case, what's the Government's estimate of how long

13   it will take to try?

14             MR. GAMMONS:  The Government thinks it will take

15   approximately three weeks to try.

16             THE COURT:  And if it is not going to be pursued

17   as a capital case at what point would the Government be

18   prepared to try the case?

19             MR. GAMMONS:  I think the Government would be

20   prepared to try it later this year, in the fall of this

21   year.  The Government just produced the second discovery

22   production, which is about 100 gigabytes of other phone

23   dumps, video, audio, and items of that nature.

24             THE COURT:  What is 100 gigabytes in old school

25   paper?

1          MR. GAMMONS:  A lot of it are police reports, but

2    a lot of it is simply jail calls, jail visitation,

3    interviews.

4          THE COURT:  Two boxes of documents, two folders of

5    documents, a binder of documents?

6          MR. GAMMONS:  The document count isn't very

7    voluminous.  It's the audio and video that makes up the

8    lion's share of the 100 gigabytes.

9          THE COURT:  How many minutes of audio and video do

10   you estimate?

11         MR. GAMMONS:  The jail visitation and the jail

12   calls probably is in excess of -- it's months and months

13   and months of audio and video.

14         THE COURT:  These people were in jail on other

15   cases?

16         MR. GAMMONS:  Yes, Your Honor.  They were charged

17   by the -- three of the defendants were charged by the State

18   on December 22nd of 2017 and have remained in custody since

19   that date.

20         THE COURT:  Well, that's not months and months and

21   months.  That's just a few months.  They weren't on the

22   phone continuously while they were in prison, in jail.

23   So maybe ten hours?

24         MR. GAMMONS:  No, Your Honor, they are on the

25   phone continuously.

1          THE COURT:  Oh.  This is before they had lawyers?

2          That's just a rhetorical question.  All right.

3    Thank you.

4          When will the defendants be prepared to try the

5    case, assuming that a determination is made by mid September

6    that this will not be a capital case?

7          MR. BRUNVAND:  Your Honor, Bjorn Brunvand on

8    behalf of Mr. Cosimano.  If I may, first of all, I don't

9    know that the -- that the two months from meeting in August

10   is realistic based on my discussions with others who are

11   handling similar cases throughout the United States.  I just

12   spoke with --

13         THE COURT:  We're just doing this hypothetically.

14         MR. BRUNVAND:  Okay.  Hypothetically, Your Honor,

15   I would say the earliest, sometime in the late spring of

16   next year.

17         THE COURT:  Why do you need so much time?

18         MR. BRUNVAND:  Your Honor, it's a combination of

19   a lot of information for us to go through as far as the jail

20   calls and visits and --

21         THE COURT:  What would you estimate to be the

22   length of the audio and video information that's been

23   produced?

24         MR. BRUNVAND:  I don't have an estimate of that at

25   this point.

1              THE COURT:  Does anyone?

2              All right.  Does anyone have a different view

3    about when the defense will be prepared to try the case than

4    sometime in the late spring of next year?

5              Now, I understand that Judge Pizzo has already

6    appointed additional counsel in regard to Mr. Cosimano.

7    Is there anyone else here seeking the appointment of

8    additional counsel in this case?

9              MS. BORGHETTI:  Yes, Your Honor.  Anne Borghetti

10   on behalf of Michael Mencher, who is charged with Count 2

11   and Count 4, which are both capital offenses, Your Honor.

12   I did file a motion seeking appointment of second chair.

13             THE COURT:  Would that be necessary if it's not

14   going to proceed as a capital case?

15             MS. BORGHETTI:  No, but they have not told me it's

16   not, so legally we're in a position where he could on

17   two counts get the death penalty.

18             THE COURT:  Do you intend to participate in the

19   mitigation hearing on his behalf?

20             MS. BORGHETTI:  They have not indicated that I am

21   presenting mitigation.

22             THE COURT:  I don't know how that works.  Is that

23   something they tell you or is it something you tell them?

24             MS. BORGHETTI:  They tell me, but they also have

25   not told me that they are not seeking the death penalty on

1    my client.

2            THE COURT:  Mr. Gammons?

3            MR. GAMMONS:  Yes, Your Honor.  It's an

4    invite-only presentation and Ms. Borghetti hasn't been

5    invited to the presentation.

6            THE COURT:  And is that some indication to her

7    one way or the other about the status of her client in

8    regard to pursuit as a capital defendant?

9            MR. GAMMONS:  I don't believe so, Your Honor.

10   It's a decision made by the Capital Case Committee.

11           THE COURT:  Well, when do they intend to make that

12   decision about whether to invite her to participate in the

13   meeting?

14           MR. GAMMONS:  It was made about three or four

15   weeks ago.

16           THE COURT:  Well, I don't understand how that

17   works either.  If they are going to seek the death penalty

18   are they obligated to have her participate in a mitigation

19   hearing?

20           MR. GAMMONS:  No, Your Honor.

21           THE COURT:  Well, what is the basis for making a

22   decision to allow somebody to participate?

23           MR. GAMMONS:  I don't know, Your Honor.  Our

24   office makes a recommendation to Capital Case Committee.

25           THE COURT:  Was she recommended to participate?

1          MR. GAMMONS:  We weren't asked.

2          THE COURT:  This is not like 50 questions.  What

3     is the status?  Did you ask for her to participate, did you

4     recommend she not participate, did someone say we don't need

5     to bother because that's not a capital case?  They need to

6     know what to do, and I need to know whether to spend

7     unnecessary CJA money to defend a defendant who is not

8     subject to a capital case.

9          MR. GAMMONS:  Yes, Your Honor.  They -- we didn't

10    make a --

11         THE COURT:  Who is "I" and who is "they" and give

12    me names.

13         MR. GAMMONS:  I didn't make a recommendation one

14    way or the other.  Capital Case didn't ask me for my

15    recommendation whether Ms. Borghetti should appear at the

16    mitigation presentation.

17         THE COURT:  Did they ask you for your

18    recommendation about Mr. Brunvand participating?

19         MR. GAMMONS:  No, Your Honor.

20         THE COURT:  You made that decision on your own?

21         MR. GAMMONS:  Capital Case Committee made that

22    decision.

23         THE COURT:  Who is Capital Case Committee?

24         MR. GAMMONS:  There's an attorney named

25    Michael Warbel who we're dealing with who is a trial

1   attorney for the Capital Case Committee.  I believe in

2   consultation with his supervision, they requested

3   Mr. Brunvand to make a mitigation presentation.

4          THE COURT:  Based on your recommendation?

5          MR. GAMMONS:  I didn't make a recommendation,

6   Your Honor.

7          THE COURT:  So you didn't make a recommendation

8   for Brunvand or anyone else?

9          MR. GAMMONS:  That's correct.

10         THE COURT:  But you can't say that that is any

11  indication that it is not a capital case as to

12  Ms. Borghetti's client?

13         MR. GAMMONS:  I can't say, Your Honor.  I don't

14  know.

15         THE COURT:  And who is your client, Mencher?

16         MS. BORGHETTI:  Michael Mencher, Your Honor.

17         THE COURT:  And you can't -- Ms. Borghetti can't

18  petition to participate or petition to get an answer one way

19  or the other?

20         MR. GAMMONS:  Not to my knowledge.  Not that

21  I know of.

22         Your Honor, Ms. Borghetti's motion, I believe the

23  Government doesn't oppose it.  I don't know one way or the

24  other what the committee is going to say.

25         THE COURT:  Well, nobody opposes the Court

 1   spending its money unnecessarily.  What's the skin off your
 2   back?
 3          I need to know whether it's necessary for her to
 4   have another lawyer because I need to know if it's necessary
 5   to help defend against a capital case and/or potential
 6   capital case, and what I'm hearing is that there is no
 7   potential capital case against your client, and so I am
 8   going to deny the motion and direct the Government to advise
 9   the Court within two weeks whether I should reconsider the
10   motion because there is a possibility to a greater degree
11   than maybe that her client would be subject to a capital
12   penalty so then I can know whether it's necessary to spend
13   additional money to have another lawyer assist in what is a
14   life or death proposition.
15          I can't spend money unnecessarily.  I don't want
16   to send a memo up to the Eleventh Circuit for that purpose
17   if there is no basis for it, and I don't hear a basis for it
18   at all for any defendant based upon the slippage, but
19   I certainly don't see it for a defendant who has not even
20   had an inquiry made to participate in a discussion about
21   whether the person is subject to a capital penalty, so the
22   motion is denied without prejudice.
23          Two weeks from today the Government will advise
24   whether the Court should reconsider the motion because it
25   now knows there is a real possibility or a certainty, and if

1  I don't hear in two weeks then I will assume that this is

2  not a capital case against Mr. Mencher, and if Ms. Borghetti

3  hears something different than she can refile her motion for

4  Mr. Mencher.

5          MR. GAMMONS:  Your Honor, I will file that motion

6  in two weeks from this day; however, I will let the Court

7  know that I won't know anything different.  The Capital Case

8  Committee doesn't discuss their internal deliberations, and

9  once they do, they will forward it to the Attorney General,

10  and I -- and I won't know what the Attorney General is going

11  to do.

12          MR. BRUNVAND:  Your Honor, can I add something?

13          THE COURT:  Yes, sir.

14          MR. BRUNVAND:  Your Honor, Steve Potolsky is the

15  Resource Counsel for this area for these type of cases, and

16  I spoke with him this morning on the way over here, and one

17  of the concerns that he expressed is the fact that there is

18  an increasing number of cases that are being authorized

19  that -- or the belief is that they were sent up as a

20  no seek, and the reason for that is they were sent up

21  without a mitigation invitation, and then the next thing you

22  know -- he had a particular case that went up as a -- what

23  he believes is a no seek recommendation, which we don't know

24  for sure, but the indication is if we're not invited to

25  present at the local level here in Tampa, which every case

1    I've had before we had to first present at the local level

2    and then in D.C., we've not been invited to present at the

3    local level, which is a good indication it has gone up as a

4    no seek.

5            He had a case, he went up under the same

6    circumstances, it took D.O.J. eight months to announce that

7    they were authorizing, and when they authorized on his case

8    they also then announced that they wanted to then also hear

9    mitigation from one of the other defendants.  So anyone who

10   is death eligible, unfortunately we're in a position where

11   we have to prepare for that eventuality, and if we don't

12   then we may find ourself six months from now having to start

13   this extensive process because we're being -- we're told in

14   six months that it's being authorized and, oh, by the way,

15   we want to speak with Ms. Borghetti's client.

16           So I think that's one of the reasons why it's so

17   important that we proceed until they officially say from --

18   the Attorney General himself officially says we're not

19   seeking.  We're in a position where the history -- recent

20   history they're seeking and authorizing cases that the

21   previous administration would never have been authorized.

22   So I think that's important for the Court to take into

23   consideration.

24           THE COURT:  And is all of this time the Government

25   takes to consider its position excludable under the speedy

1  trial calendar, unilaterally?

2         MR. BRUNVAND:  Well --

3         THE COURT:  That's a question --

4         MR. BRUNVAND:  If the -- I don't know -- I believe

5  that if there's a pending motion it's excludable.  We filed

6  a waiver on behalf of our client.  I don't know that it's --

7  that it is -- if there's no pending motions that it would be

8  excludable.

9         THE COURT:  Counsel?

10         MR. GAMMONS:  I believe that's the case.  I don't

11  think by rule it's excludable.  I think a motion would have

12  to be filed to exclude the time.

13         THE COURT:  Well, why can't we sever the capital

14  defendant and proceed with the other defendants and then if

15  the cap comes back in ten months, eight months, 12 months,

16  two years, take that up?

17         MR. GAMMONS:  Your Honor, I think that's a

18  possibility.  I think at this point we don't know which

19  defendants are capital defendants.

20         THE COURT:  Well, if no determination is made that

21  they are, then they aren't, and if no indication is that

22  they are, then they aren't, and I think we can exclude some

23  of them, can't we?

24         MR. GAMMONS:  Yes, Your Honor.  I think that if --

25  hypothetically, if one or more of the defendants, the

```
 1    Attorney General approved a seek -- seeking the death
 2    penalty, it would make sense to sever from the other
 3    defendants.  At this point I just don't know -- I don't know
 4    how those numbers will work out.
 5              THE COURT:  Counsel.
 6              MR. BRUNVAND:  Your Honor, could I -- I should
 7    make you aware of one other thing that's in the works.
 8    I had contacted the Office of the United States Attorney,
 9    I think it was yesterday, indicating that I am requesting at
10    least another month prep time for the August -- we are now
11    scheduled for August 6th to go to D.C.  Previously we would
12    have at least six months or more to prepare for that
13    meeting.  It involves obviously -- the preparation involves
14    extensive investigative work and mitigation work, and I know
15    they're taking that into consideration.  I've only asked for
16    an extra month because I understand that under the new
17    regime that they are moving these cases along a lot faster
18    than they were in the past, but I wanted you to know that
19    I had asked for a one month extension to go to D.C.
20              THE COURT:  I don't understand what you mean by
21    "under the new regime."  Do you mean under the current
22    Attorney General, or under --
23              MR. BRUNVAND:  That's correct.  Yes, under the
24    current Attorney General my understanding is that these
25    cases are moving a lot faster than they were before.  I've
```

```
1   had cases here in the Middle District before that --
2   potential death cases where it took well over a year, year
3   and a half, for the Capital Committee to make a decision.
4            THE COURT:  Mr. Gammons, what's the status of that
5   inquiry?
6            MR. GAMMONS:  Your Honor, I wanted to come and
7   have this hearing today to see -- to let the Judge know
8   what's going on and hear the Judge's opinion about moving
9   this case along.  Obviously if -- I think if we agree to
10  move the mitigation presentation a month, it will delay how
11  long until we get an ultimate decision from the Attorney
12  General, so depending on where the Court wants to place
13  this, this trial will depend on whether we agree to continue
14  that presentation.
15           THE COURT:  Sort of a round robin.  Where you
16  place that determination will dictate to some degree where
17  we reasonably can set the trial, and you're estimating
18  two months but not really committing to two months and I'm
19  hearing eight months and I'm hearing lack of any local
20  control over any part of the process.
21           What is the view of the other defendants about a
22  severance of the other defendants who are not currently
23  being asked to participate in any death penalty analysis
24  capital process so that as to the clients who are not so
25  affected the case moves forward?
```

1        MR. LITTLE:  Judge, David Little on behalf of

2   Mr. Robinson, covering for Mr. Brown.

3        I think the Court's inquiry, that is something

4   Mr. Brown would seek to do, assuming the Government would

5   move forward on the death penalty with other defendants.

6   I would anticipate Mr. Brown would want to sever from those

7   defendants and not be involved in that trial.

8        I know he is currently waived through

9   December 31st of this year.  He's indicated to me that he

10  can't represent to the Court whether it's going to be a

11  trial case or whether he anticipates pleading his client, as

12  he's continuing to review the discovery.  We've just been

13  provided the additional discovery this morning on a hard

14  drive, so he hasn't even begun to look at the new discovery.

15  So that's what I can offer the Court as to Mr. Robinson.

16       THE COURT:  Thank you.

17       MR. JOHNSON:  Your Honor, Darrin Johnson for

18  Attorney Stechschulte on behalf of Mr. Guinto.

19       THE COURT:  Can you pull that microphone in front

20  of Ms. Borghetti over to you.  Yes, sir.

21       MR. JOHNSON:  Again, Your Honor, Darrin Johnson.

22  I'm covering for Mr. Stechschulte on behalf of Mr. Guinto.

23       I can tell the Court that -- with more than a

24  reasonable certainty that Mr. Guinto and Mr. Stechschulte

25  expect a plea within the next few months.  I think that can

1    be more spoken to by Mr. Gammons possibly, if the Court

2    needs, but Mr. Stechschulte has not yet received that

3    100 gigabytes of discovery.  He's out of the state on

4    vacation.  Once he returns, he will send over a hard drive

5    to the Government to receive the discovery, but as it stands

6    he anticipates a change of plea in the next few months.

7             THE COURT:  All right.

8             MS. BORGHETTI:  And, Your Honor, on behalf of

9    Mr. Mencher, Anne Borghetti.

10             Your Honor, we are in a trial posture.  I would

11   anticipate that I would be filing a severance if they do not

12   seek on my client and they are seeking on others.  We have

13   not -- I have not filed a waiver, I anticipate filing a

14   waiver, and I am still reviewing the first set of discovery,

15   which is quite extensive, Judge.  So I believe a February

16   trial date could be possible, but we are in a trial posture.

17             THE COURT:  Thank you.

18             Counsel.

19             MR. DOSS:  Yes, Your Honor.  I would be moving to

20   sever if Mr. Wesling turns out to be a noncapital case,

21   I would be moving to sever from anybody that was having the

22   death penalty authorized to be sought against them, so that

23   that part I have no issue with.  As far as some kind of

24   estimation as to discovery and when we would be available,

25   we're in the same boat as Ms. Borghetti in that we're

1   working through the first round of discovery we received,

2   which is -- we had sent over a terabyte hard drive, which is

3   ten times as much as the 100 that Mr. Gammons was speaking

4   of, and we're trying to make headway on that, Your Honor.

5            My only fear would be -- is that if the Government

6   came back and decided that they were going to authorize,

7   then we would essentially go back to square one.

8   I currently have a death authorized case in the Orlando

9   division and it took a year for us to be able to get a

10  decision on that.  Frankly, it was one that I didn't expect

11  to be authorized or think should be authorized and that

12  happened anyway.  That being the case, Your Honor, you know,

13  we'll work as diligently as possible to be ready on the

14  noncapital case, but I am scheduled to try that capital case

15  before Judge Dalton on January 7th.

16            THE COURT:  How long is it supposed to last?

17            MR. DOSS:  There's -- the estimate is two to

18  three months, depending on jury selection, Your Honor.

19            THE COURT:  A single defendant case or multiple

20  defendant case?

21            MR. DOSS:  Single defendant, Your Honor.  The jury

22  questionnaires are scheduled to go out, I believe, in

23  September.

24            THE COURT:  So that will take you out of pocket

25  essentially through March and then one month for recovery

1  through April, at least.

2          MR. DOSS:  Yes, Your Honor.

3          THE COURT:  And which is your defendant?

4          MR. DOSS:  Cody Wesling, Your Honor.  And we have

5  not been asked to go to Washington, D.C., Your Honor.

6          THE COURT:  Mr. Gammons, can you represent that

7  he's the least likely individual to be charged capitally, or

8  you don't know that either?

9          MR. GAMMONS:  I don't know that, Your Honor.

10         THE COURT:  Do you know, Mr. Gammons, whether the

11 department takes up capital determinations without ever

12 inviting a defendant's counsel for a mitigation meeting?

13         MR. GAMMONS:  I believe that they're able to.

14 I don't know if as a practice that's something that they do,

15 but I know that they are able to.

16         THE COURT:  All right.  There is a pending motion

17 to dismiss in this case.  What is the Government's position

18 with respect to, first of all, the deadline by which it's

19 prepared to file a written comprehensive response, and/or,

20 secondly, whether it intends to amend the indictment to

21 address the issue raised rather than responding?

22         MR. GAMMONS:  Your Honor, we will be amending the

23 indictment, but we will be filing a substantive response,

24 I believe it's due a week from Thursday, and I expect that

25 that is when the response will be filed.

```
 1                    THE COURT:  Do you intend in the amended
 2      indictment to address the particularity issue with respect
 3      to the underlying provision of the Florida murder statute or
 4      just amending just in the matter of course for other
 5      reasons?
 6                    MR. GAMMONS:  The former, Your Honor.
 7                    THE COURT:  And when do you expect the amended
 8      indictment will be filed?
 9                    MR. GAMMONS:  Next week.
10                    THE COURT:  Before the response?
11                    MR. GAMMONS:  Likely the day the response is due.
12                    THE COURT:  So then I guess you believe that the
13      statute is divisible?
14                    MR. GAMMONS:  Yes, Your Honor.
15                    THE COURT:  Counsel?
16                    MR. DOSS:  Yes, Your Honor.
17                    THE COURT:  If the Government amends the
18      indictment and pleads a specific provision which does
19      require proof of some force or violence, would that moot in
20      your mind the motion to dismiss?
21                    MR. DOSS:  Depending upon which one that they
22      choose, Your Honor, it could possibly, yes.  I don't know
23      which subsection that they're going to amend to, but it
24      could, yes.
25                    THE COURT:  So you also believe the statute is
```

1    divisible?

2         MR. DOSS:  Yes, Your Honor.

3         THE COURT:  All right.  Well, then what we'll do

4    is I'll allow the Government to file whatever it intends to

5    file with respect to the motion to dismiss and the amended

6    indictment and then I will allow the defense a 14 day

7    deadline to file a reply.  Will that be sufficient?

8         MR. DOSS:  Yes, Your Honor.

9         THE COURT:  14 days to file a reply once the

10   indictment is amended and the response is filed.  If the

11   response is filed and there's no amended indictment, your

12   deadline to file a reply continues to be extended until an

13   indictment is presented, and if the Government changes its

14   mind about amending the indictment, please advise in the

15   body of the motion, in the body of the response to the

16   motion to dismiss.

17        MR. GAMMONS:  Yes, ma'am.

18        THE COURT:  Does the Government oppose severance

19   of the defendants who are not yet advised that they are

20   subject to a capital inquiry?

21        MR. GAMMONS:  Mr. Robinson from the other four

22   defendants?

23        THE COURT:  No, Mr. Cosimano from the other four

24   defendants.

25        MR. GAMMONS:  Mr. Cosimano, Mencher, Guinto and

 1  Wesling are still under consideration for whether the death

 2  penalty will be sought.  Mr. Robinson is not charged with

 3  capital -- for a crime that's punishable by death.  So the

 4  Government would be opposed to Mr. Cosimano being severed

 5  from the other co-defendants.

 6          THE COURT:  Well, your last answer is a little

 7  confusing in that when I asked about the recommendation of

 8  consideration of Ms. Borghetti's client for capital status

 9  you said, I can't say, Your Honor, I don't know.  Now you

10  seem quite emphatic that you do know she's under

11  consideration.

12          MR. GAMMONS:  I'm not sure I understand the

13  Court's question.  Those --

14          THE COURT:  Is her client under consideration for

15  a capital penalty or is she not, or do you not know?

16          MR. GAMMONS:  So it's a capital -- she is under

17  consideration.

18          THE COURT:  And that is based upon communication

19  you've had with the Capital Committee, or is that based upon

20  an absence of a determination from the Capital Committee?

21          MR. GAMMONS:  The latter.  It's a capital

22  punishable crime and no decision has been made by the

23  Attorney General, so those --

24          THE COURT:  All right.  There's no reason multiple

25  capital cases can't be tried separately though, right?

1              MR. GAMMONS:  No, Your Honor.

2              THE COURT:  All right.  File your motion for

3     severance.  I will take it under advisement.  And I guess as

4     to Mr. Robinson there's an agreed severance?  Is there a

5     motion?

6              MR. LITTLE:  Judge, as to Mr. Robinson, because

7     it's Mr. Brown's case and he's attorney of record, could I

8     just have a little bit of time to have Mr. Brown consider

9     that issue for sure before I make the motion on his behalf?

10             THE COURT:  Yes, sir.

11             And with respect to the pendency of this plea,

12    what is the Government's response?

13             MR. GAMMONS:  The United States is going to tender

14    a plea agreement to Mr. Guinto.  The -- right now, without a

15    decision, it would have to include conditional language

16    saying that assuming that the Attorney General does not

17    approve the death penalty, these are what your penalties

18    are.  The capital case trial attorney has advised that it's

19    best to wait until you get a firm decision because there's

20    worries about the enforceability of a conditional plea of

21    that nature.  So the Government is hoping to receive a

22    decision on Mr. Guinto and then tender that plea agreement.

23             THE COURT:  Outside of this indefinite, open-ended

24    analysis with respect to the other defendants, you expect to

25    have that determination?

 1              MR. GAMMONS:  Yes, Your Honor.

 2              THE COURT:  Do you have a timeframe estimate for

 3      that?

 4              MR. GAMMONS:  It's the same timeframe I mentioned

 5      earlier.  Hopefully within two months.

 6              THE COURT:  Do you disagree with Mr. Brunvand's

 7      assessment that this two month period is unrealistic?

 8              MR. GAMMONS:  I don't disagree, but I don't have

 9      any personal knowledge with which to base it on.

10              THE COURT:  All right.  We will get a two week

11      deadline out for motions to sever filed by any defendant who

12      so desires with any type of combination of people with whom

13      you'd like to stay connected, and the Court will ferret it

14      all out once the motions are at issue.  The Government will

15      have a tight 14 day response deadline to those motions or

16      consent deadline to the motions.  You all -- there's nothing

17      to stop you from sitting down in a room and agreeing on a

18      different breakout, but I don't see a reason to hold this

19      case hostage indefinitely for the Government to decide in

20      its due course what it intends to do when.

21              Now, if the discovery is requiring this case to

22      push out until what now is effectively the summer of next

23      year, given trial calendars and realism, then the parties

24      should take that into consideration in deciding how to

25      proceed and at what speed and whether to proceed to sever.

 1 | There are advantages and disadvantages, obviously.
 2 | But 14 days for motions, and the Court will take them up
 3 | after the Government files its response in 14 days.
 4 |        Given the uncertainty of this business about what
 5 | the Government intends to do with Mr. Mencher, the Court
 6 | would grant the motion for additional learned counsel in his
 7 | case.  And this is Ms. Palmieri?
 8 |        MS. BORGHETTI:  Yes, Your Honor, and I'm seeking
 9 | her as co-counsel, additional co-counsel.  I am learned
10 | counsel.  I qualify as learned counsel.
11 |        THE COURT:  All right.  Thank you.
12 |        Well, learned counsel does not mean expensive
13 | counsel, so the parties are going to have to curtail their
14 | expenses and expenditures with the understanding that,
15 | though this is a significant case, the CJA budget is not
16 | endless.
17 |        Are there any requests for interim payment or
18 | budgeting to address those potential concerns?
19 |        Yes, sir.
20 |        MR. BRUNVAND:  Your Honor, we anticipate filing a
21 | proposed seed budget by the end of this week, ex parte.
22 |        THE COURT:  Just for your client?
23 |        MR. BRUNVAND:  For my client.  We already have --
24 | the investigator and mitigation specialist has already been
25 | working on the case, we've identified some potential

1  experts, and we'll set that forth in a -- in a proposed

2  budget and should have it filed by this Friday, I hope.

3            THE COURT:  Thank you.

4            Anybody else?

5            MS. BORGHETTI:  With the Court's ruling now,

6  I will present a budget to the Court.

7            THE COURT:  How long do you think it will take you

8  to get it together?

9            MS. BORGHETTI:  I would ask at least for ten days.

10  And I did file a motion for interim payments, Your Honor.

11            THE COURT:  Well, I'll set it out 14 days, because

12  I do things in seven day increments, and I'll take into

13  consideration the request for interim payments once I see

14  what the budget looks like, and I'll probably just ask

15  Judge Pizzo to take up all the budgeting and payment issues

16  so that we can keep that part of the case sort of segregated

17  from this other part of the case and somebody will always be

18  on top of those issues.

19            I'm going to set the case on the April trial

20  docket, anticipating that in the next now three months, if

21  there's a one month extension to participate in mitigation,

22  it's granted, would yield a no capital case determination.

23  If a capital determination is made for any defendant, the

24  Court will take that into account in amending the trial

25  schedule, and depending on what we do with the severance it

1   may be sort of a staggered trial calendar.

2           Yes, sir.

3           MR. BRUNVAND:  Would the Court consider setting it

4   for May?  I have already made plans to travel to Norway with

5   my daughters for a confirmation in the third week of April

6   of next year.  I certainly understand if that's not

7   possible, but I would ask for that.

8           THE COURT:  My life is not nearly as glamorous as

9   yours, Mr. Brunvand, so I can do this in May if necessary.

10  So we'll --

11          MR. BRUNVAND:  Thank you, Your Honor.

12          THE COURT:  -- push it over to May.

13          I, in candor, believe that's a hold date and would

14  have less impact upon Mr. Brunvand potentially than any of

15  the other defendants, so what we'll do is we'll keep open

16  the April and May timeframe.  If we sever, it's likely that

17  the alleged lesser culpable defendants would sit in April

18  and the alleged more culpable defendant would proceed in

19  May, but I just don't believe any of those are real dates.

20  I'm just putting them on the calendar so we have some sense

21  of where we are, because we'll have to address them as pleas

22  are presented and as severance motions are presented and as

23  motions to continue because there's no word from Washington

24  are filed.

25          Anything else the Court can assist the parties

1  with?

2          Mr. Brunvand, do you need to do anything else?

3  I don't want to hold you forever from Judge Honeywell.

4          MR. BRUNVAND:  No, Your Honor, and Mr. Wise can

5  remain if there's any other issues.

6          THE COURT:  All right.  You can be excused.

7          MR. BRUNVAND:  Thank you, Your Honor.

8          THE COURT:  Any other issues the parties need the

9  Court to address?

10          And no one else needed budgeting or interim

11  payments?  I just heard from Ms. Borghetti and Mr. Brunvand.

12  Is that right?

13          MR. JOHNSON:  That is correct for

14  Mr. Stechschulte, Your Honor.

15          MR. LITTLE:  That is correct, Your Honor, for

16  Mr. Brown.

17          MR. DOSS:  None from the Federal Defender's

18  Office, Your Honor.

19          THE COURT:  If only, right?

20          Anything else the parties can address to the

21  Court?  I assume everyone is satisfied with the speed of

22  discovery.

23          Is there anything else, Mr. Gammons?

24          MR. GAMMONS:  Not from the United States.

25          MS. BORGHETTI:  Your Honor, I would just mention,

1  Anne Borghetti on behalf of Michael Mencher, when I asked

2  Ms. Palmieri to be co-counsel on the case she indicated that

3  she -- her daughter was graduating in May and didn't want to

4  try a case in May, so I may be asking the Court to change my

5  co-counsel if in fact I tell her that there's a possibility

6  that it would be a trial in May.

7         THE COURT:  Well, I wouldn't do that just yet

8  because I don't think this is going to hold for May, I just

9  really need to put it on the calendar to hold it so we can

10 operate around some level of less uncertainty, but that's

11 your prerogative.  I don't -- I really don't believe those

12 dates are going to hold based upon everything that I'm

13 hearing this morning.

14        MS. BORGHETTI:  Okay.  Thank you, Your Honor.

15        THE COURT:  And I didn't understand this business

16 about sending over the terabyte hard drive.  Is it the

17 Public Defenders' anticipation that a larger quantity of

18 discovery is going to be offered than what the Government is

19 suggesting?

20        MR. DOSS:  No, Your Honor.  That's what we had

21 already sent over for our first -- for the first receipt of

22 discovery.  The 100 gigabytes that the Government was

23 talking about is the second round of discovery that's being

24 sent.

25        THE COURT:  Oh, I see.

1              Anything further from the Government?

2              MR. GAMMONS:  No, Your Honor.

3              THE COURT:  The parties are set for status

4    conference on the 30th of August at 10:00.  Is there any

5    conflict for that conference?

6              MR. GAMMONS:  Not from the Government.

7              MR. WISE:  Not for Mr. Cosimano, Your Honor.

8              MS. BORGHETTI:  Not for Mr. Mencher.

9              MR. JOHNSON:  Not for Mr. Guinto, Your Honor.

10             MR. LITTLE:  Not for Mr. Robinson.

11             MR. DOSS:  No, Your Honor.

12             THE COURT:  All right.  We'll hold that date then,

13   and then my guess is that we'll set statuses in this case at

14   sort of 60 day intervals if no movement is confirmed at that

15   status conference on the outstanding issues.

16             And, I'm sorry, did we resolve when you would let

17   Ms. -- you'll let the Court know in two weeks what you don't

18   think you're going to know in two weeks, which is

19   Ms. Borghetti's client's status; is that right?

20             MR. GAMMONS:  Yes, Your Honor.  I'm happy to do

21   that with the granting of Ms. Borghetti -- I guess with the

22   granting of her motion.  Would the Court still like me to

23   advise the Court if there's --

24             THE COURT:  Yes.  I think she is entitled to know

25   what you know, and if it turns out in two weeks you don't

1  know anything, you can still tell her that, but I think the

2  Court is going to request that the Government seek to know

3  something so that this case can operate on some sort of

4  stronger footing than maybe.

5        MR. GAMMONS:  Yes, Your Honor.  I'm happy --

6        THE COURT:  Especially as it relates to any

7  opposition to severance, you'll need to know that so that

8  presumably you can articulate a reason why not to sever her

9  client from the others if she chooses to file such a motion.

10        MR. GAMMONS:  Yes, Your Honor.  I'm happy to do

11  that informally with Ms. Borghetti or file it, or send

12  something to chambers, however the Court prefers.

13        THE COURT:  I don't see any reason -- unless

14  there's a reason to hide some information, there's no reason

15  to seal or ex parte the Court.  If there's something

16  sensitive you can always file a motion for leave to file

17  under seal and I'll take it up at that time.

18        Is there anything further from the Government or

19  the defense?

20        MR. GAMMONS:  No, Your Honor.

21        MS. BORGHETTI:  No, Your Honor.

22        MR. WISE:  No, Your Honor.

23        THE COURT:  We're dismissed.

24                    - - - - -

25        (Proceedings concluded at 10:52 a.m.)

1                    C E R T I F I C A T E

2

3          This is to certify that the foregoing transcript

4    of proceedings taken in a status conference in the United

5    States District Court is a true and accurate transcript of

6    the proceedings taken by me in machine shorthand and

7    transcribed by computer under my supervision, this the 16th

8    day of August, 2018.

9

10

11                                   /S/ DAVID J. COLLIER

12

13                              DAVID J. COLLIER

14                              OFFICIAL COURT REPORTER

15

16

17

18

19

20

21

22

23

24

25