IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|         Plaintiff, | ) |
| | ) |
| | ) Case No. |
|     vs. | ) 8:18-CR-00234-MSS-SPF |
| | ) |
| | ) |
| CHRISTOPHER BRIAN COSIMANO, | ) |
| MICHAEL DOMINICK MENCHER, | ) |
| ALLAN BURT GUINTO, | ) |
| ERICK RICHARD ROBINSON, | ) |
| CODY JAMES WESLING, | ) |
| | ) |
|        Defendants. | ) |

_____

**STATUS CONFERENCE**
**BEFORE THE HONORABLE MARY S. SCRIVEN**
**UNITED STATES DISTRICT JUDGE**

**FEBRUARY 6, 2019**
**10:07 A.M.**
**TAMPA, FLORIDA**

_____

Proceedings recorded by mechanical stenography,
transcript produced using computer-aided transcription.

_____

**DAVID J. COLLIER, RMR, CRR**
FEDERAL OFFICIAL COURT REPORTER
801 NORTH FLORIDA AVENUE, 7TH FLOOR
TAMPA, FLORIDA  33602

 1   **APPEARANCES:**

 2   **FOR THE GOVERNMENT:**

 3            *Carlton Gammons*
             *Natalie Hirt Adams*
 4           United States Attorney's Office
             400 N. Tampa Street, Suite 3200
 5           Tampa, Florida  33602
             (813) 274-6000

 6

 7   **FOR THE DEFENDANT CHRISTOPHER BRIAN COSIMANO:**

 8            *J. Jervis Wise*    **(via telephone)**
             Bjorn E. Brunvand, P.A.
 9           615 Turner Street
             Clearwater, Florida  33756
10           (727) 446-7505

11

12   **FOR THE DEFENDANT MICHAEL DOMINICK MENCHER:**

13
             *Anne F. Borghetti*
14           Anne F. Borghetti, P.A.
             12211 49th Street North, Suite 1
15           Clearwater, Florida  33762-4300
             (727) 502-0300

16

17   **FOR THE DEFENDANT ERICK RICHARD ROBINSON:**

18
             *Jeffrey Geldert Brown*
19           Brown & Doherty, P.A.
             450 Carillon Parkway, Suite 120
20           St. Petersburg, Florida  33716
             (727) 299-0099

21

22   **FOR THE DEFENDANT CODY JAMES WESLING:**

23
             *Raudel Vitier*
24           Federal Public Defender's Office
             400 N. Tampa Street, Suite 2700
25           Tampa, Florida  33602-4726
             (813) 228-2562

```
 1                    P R O C E E D I N G S
 2                    -  -  -  o0o  -  -  -
 3              THE COURT:  Good morning.  Call the case, please.
 4              COURTROOM DEPUTY:  Yes, Your Honor.
 5              Court calls Case Number 8:18-234-T-35SPF, the
    United States of America versus Cosimano, et al.
 6
 7              Counsel, please state your appearances for the
 8   record, beginning with counsel for the Government.
 9              MR. GAMMONS:  Good morning, Your Honor.
10   Carlton Gammons and Natalie Adams for the United States.
11              THE COURT:  Good morning.
12              MS. BORGHETTI:  Good morning, Your Honor.
13   Anne Borghetti --
14              MR. WISE:  Jervis Wise on behalf of Christopher --
15              THE COURT:  Who was that?
16              MR. WISE:  I'm sorry, Your Honor.  Jervis Wise on
17   behalf of Christopher Cosimano.
18              THE COURT:  Good morning.
19              MS. BORGHETTI:  Good morning, Your Honor.
20   Anne~Borghetti on behalf of Michael Mencher.
21              THE COURT:  Good morning.
22              MR. BROWN:  Jeff Brown on behalf of Erick
23   Robinson.
24              MR. VITIER:  Good morning, Your Honor.  Del Vitier
25   on behalf of Cody Wesling.
```

```
1            THE COURT:  Good morning.

2            We are here to conduct the status conference in

3    this case.  Counsel can remain seated through this

4    discussion, but speak into your microphones when you're

5    speaking.

6            I guess there are two motions and an objection

7    pending in the case in the way of pending motions and

8    proceedings, and then there is just sort of general

9    housekeeping that needs to be done.

10           I guess the first place to start is this motion to

11   dismiss the indictment as duplicitous.  I don't think

12   there's any merit to the motion.  I've read it.  I've read

13   the indictment.  It appears to me the indictment charges

14   murder essentially looking to the Florida statute, and it

15   incorporates only murder by malice aforethought and it

16   identifies all the types of circumstances and means of

17   murder but it doesn't -- those are not elements, and so

18   I don't know how the jury could be confused and I don't know

19   how it could find a defendant guilty without all of the

20   essential elements of the offense of murder with malice

21   aforethought being satisfied.

22           Does anybody wish to be heard further with respect

23   to that motion?

24           MR. GAMMONS:  The Government does not, Your Honor.

25           THE COURT:  It was Mr. Wesling's motion, right?
```

1           MR. VITIER:  Yes, Your Honor, Mr. Doss filed it,

2    I didn't know we were going to address it today, but as far

3    as -- I would rely on the motion, basically saying that it

4    doesn't provide adequate notice as to what type of murder

5    they're discussing and that it would be confusing to the

6    jury that there's so many different ways that they could be

7    charged by that that they wouldn't be entering a true and

8    correct verdict based on the fact that there's not --

9    there's so many ways that you could violate 18 U.S.C. 1111.

10          THE COURT:  But any one of those ways is

11   sufficient to meet the requirements of the statute and all

12   that's required is the killing of a human being by malice

13   aforethought, and if the Government proves that, then it's

14   proven -- it's met its burden, so I'm not sure how the fact

15   that there might be other things that could be established

16   would preclude the indictment from being adequate and notice

17   being sufficient, so the Court denies the motion to dismiss

18   the indictment.

19          Now, there is in addition to that an objection to

20   the magistrate judge's order denying the motion for

21   disclosure of the identity and production of the

22   confidential informant.  I don't know where Mr. Doss is,

23   since most of these are his motions.  Where is he today?

24          MR. VITIER:  Your Honor, he's out on medical

25   leave.

1          THE COURT:  All right.  Well, are you prepared to

2     address that motion?

3          MR. VITIER:  I am not.

4          THE COURT:  Well, it's been joined in by everybody

5     except Mr. Robinson, as I understand it.  Cosimano and

6     Mencher have joined the motion.  Does anybody want to be

7     heard?  I assume they have also joined the objections.

8          This is why I don't hold status conferences,

9     people, because nobody wants to do anything at a status

10    conference.  We have issues, so let me talk about it,

11    because I'm confused.

12         The Government says that this confidential

13    informant is not engaged in the criminal activity charged in

14    the indictment.  This is as broad of an indictment as

15    possible, and I doubt if the Government would contend that

16    this confidential informant who was present in New York at a

17    drug transaction involving five gallons of heroin was merely

18    present, so insofar as he was present and a participant in

19    that drug transaction, he is engaged in at least that

20    criminal activity, only apparently charged directly against

21    Mr. Robinson who, notably, is not part of the motion for

22    disclosure of the confidential informant, but that

23    underlying criminal activity is one of the means of

24    conspiracy to commit murder in aid of racketeering that's

25    alleged by the Government in the indictment, that is, the

1  indictment says here are all these different means and one

2  of the listed means is drug dealing.

3          I'm not sure whether this confidential informant

4  was involved in any other of these means, and I'm not sure

5  if this confidential informant's involvement in this

6  particular transaction is one of the means by which the

7  Government intends to pursue, for example, Mr. Cosimano, who

8  was present at this transaction and apparently did,

9  as alleged, take these drugs to wherever he was supposed to

10  take them, to Florida, and wasn't able to sell them and

11  shipped them back to whomever he was supposed to ship them

12  back to.  So I need to have a better understanding of this

13  confidential informant's activity in regard to that and

14  whether there are other reports that weren't disclosed to

15  the defendants.

16          The Government's response is sort of incomplete as

17  it relates to the information it has about this confidential

18  informant and whether these reports are only two of the

19  reports or whether the two reports are all of the reports.

20  I doubt it, based upon what I see, there's got be more to

21  this confidential informant's debriefing than what was

22  produced, but maybe not; but if he or she is involved in

23  activity supporting any of these means alleged by the

24  Government in the conspiracy, it would seem that they are a

25  participant in the criminal activity charged in the

 1  indictment, and insofar as the other defendants who have
 2  moved, other than Mr. Robinson, are concerned, it would meet
 3  the criteria that Judge Flynn found it not to meet.
 4       And then as it relates to the need for the
 5  protection of the identity of the confidential informant,
 6  that strikes me as somewhat -- unconvincing is the best nice
 7  word, because if you read this and you have a brain and you
 8  can draw a line from dot A to dot B then if what's alleged
 9  in this confidential informant's story is true, I assume
10  everybody knows who he or she is, or if it's not true then
11  it's not true and it's not reliable.
12       I also don't know who knows what.  I don't know --
13  this thing was filed initially not under seal, so I assume
14  that the reports were not sealed as against the public, and
15  then it was moved to be filed under seal and the orders
16  under seal, so I'm not really sure who is supposed to know
17  what.
18       I have visitors in the courtroom and I don't know
19  who can't hear what needs to be said to address the Court's
20  questions.
21       MR. GAMMONS:  Your Honor, let me clarify.
22       When Mr. Doss filed his initial motion he wanted
23  the disclosure of two separate CIs.  The first CI, which
24  I'll refer to as CI number 1, I believe that individual's
25  identity is known to all parties.  If they don't know who

1  that individual is, I'm happy to let them -- I'm happy to

2  let them know who that is.  That individual is the one you

3  referred to being present at drug deals.  Several reports

4  have been published in discovery identifying him and

5  identifying his interaction with the other co-defendants.

6             THE COURT:  And that's not the person who is the

7  subject of Judge Flynn's order?

8             MR. GAMMONS:  Correct.

9             THE COURT:  That's a different informant.

10             MR. GAMMONS:  That's a different informant.

11             After Mr. Doss filed his motion, I believe he

12  realized that he knew who informant number 1 was, so his --

13  he began to focus on informant number 2.

14             Informant number 2 has --

15             THE COURT:  Well, Mr. Wees -- Mr. -- is it

16  Weesling, Wesling?

17             MR. VITIER:  Wesling, Your Honor.

18             THE COURT:  Mr. Wesling's family is in the

19  courtroom.  Is this a sealed proceeding or not?

20             MR. GAMMONS:  I don't believe it needs to be

21  sealed, Your Honor.

22             THE COURT:  All right.  Go ahead.

23             MR. GAMMONS:  The person I refer to as informant

24  number 2 hasn't met some of the defendants, is not involved

25  in any of the offense conduct, I don't believe he's

1    implicated in any way for the purposes of this conspiracy,

2    and --

3              THE COURT:  So let's back up right there.

4              So the transaction that informant number 2

5    participated in that's described in the order -- is that

6    confidential informant number 2, the one that is described

7    as having gone to New York and --

8              MR. GAMMONS:  That's informant number 1,

9    Your Honor.

10             THE COURT:  So informant number 1's name is known

11   to everyone, or if it is not known you're willing to tell

12   them?

13             MR. GAMMONS:  Yes, Your Honor.

14             THE COURT:  So let me pull up the order, because

15   I don't recall a description or a reference to another

16   informant.

17             Can you point me to the description of the

18   involvement of CI-2 in this order?

19             MR. GAMMONS:  Your Honor, I don't have that order

20   in front of me, Judge Flynn's order.

21             THE COURT:  Well, I'm reading it.

22             Well, let me ask first this question.  This may be

23   the simpler question.

24             The objection to the magistrate judge's order is

25   the one that references this transaction.  This is a

1    transaction that purports to be the one that Mr. Gammons is

2    describing as involving CI-1.  The report provided says:

3    Robinson tried to work with Ciriano selling drugs.  CI was

4    at the home involving in a drug transaction.  Cosimano and

5    Robinson spoke about having heroin and then drove the heroin

6    from New York to Florida.

7            That's the one you're willing to disclose?

8            MR. GAMMONS:  Yes, Your Honor.

9            THE COURT:  Have you disclosed him in some sort of

10   debriefing or meeting or e-mail?

11           MR. GAMMONS:  His -- not explicitly, Your Honor,

12   but if --

13           THE COURT:  So no.

14           MR. GAMMONS:  It's readily apparent from the

15   discovery --

16           THE COURT:  So now Mr. --

17           MR. GAMMONS:  -- who that is.

18           THE COURT:  And this is the objection filed by

19   whom?

20           MR. GAMMONS:  Mr. Doss.

21           THE COURT:  So, Mr. Vitier, does Mr. Doss not know

22   who this person is?

23           MR. VITIER:  Your Honor, I can't speak to that.

24   To be honest with you, I didn't know that we were going to

25   have a motions here today, Your Honor.  I definitely would

1  have been prepared for that.  I thought it was just for the

2  status of the case, but I would -- I mean, we would be

3  requesting, obviously, a hearing on those motions.

4  THE COURT:  Well, I'm not having a hearing on the

5  motion because that's what I'm doing now, but anyway we

6  don't need a hearing on the motion because the Government

7  says it's prepared to disclose the name of this confidential

8  informant to the defendants who can't figure it out.

9  So you need to do that today, send an e-mail or

10  some sort of correspondence to all defendants disclosing the

11  identity of this CI.

12  Now, the second CI is the one I don't see a

13  description of, it's not part of the objection, and I don't

14  see any reference to it in the order.

15  Can you give Mr.  -- can you give Mr. Gammons a

16  copy of the order, please.

17  COURTROOM DEPUTY:  Yes, your honor.

18  THE COURT:  Well, there are parties here who

19  joined in this motion.  Does anybody read the motion they

20  joined in or the order that they are challenging in their

21  joined-in motion?

22  Ms. Borghetti, you joined in this motion.

23  MS. BORGHETTI:  I did read it, Your Honor.  I do

24  not have it with me.  I thought we were just doing the

25  motion to continue the trial.  I apologize.

1     THE COURT:  Well, you joined in this motion.  What
2  was your basis for joining in the motion?

3     MS. BORGHETTI:  At the time -- well, I did not --
4  I have a guess who CI number 1 is, but I did not know who
5  the second informant was, Your Honor.  And as I say, I'm
6  guessing as to who number 1 is.

7     THE COURT:  Is there any additional information on
8  the non-disclosed confidential informant that wasn't
9  disclosed to the defendants that would suggest that that
10 confidential informant had a broader engagement in the
11 conspiracy to commit murder in aid of racketeering offense?

12    MR. GAMMONS:  No, ma'am.  That individual was
13 interviewed twice, two ROIs were produced, those ROIs were
14 produced in discovery to defense counsel, and that
15 individual hasn't been spoken to again by law enforcement.

16    THE COURT:  So my reading of this order suggests
17 that there is just one confidential informant that the Court
18 directs its discussion to, and the reports that are part of
19 Mr. Doss' objection are in relation to the drug transaction
20 involving the confidential informant the Government advises
21 it's willing to disclose, so where is there a reference to
22 the other confidential informant in this order?  Because --

23    MR. GAMMONS:  Your Honor --

24    THE COURT:  I'm sorry.  The other confidential
25 informant has been identified by name by Mr. Wesling, and so

```
 1   I'm just very confused about whether there's that person,
 2   Leonard, and then some other person who was involved in this
 3   heroin transaction or whether Leonard is the heroin
 4   transaction person.
 5           MR. GAMMONS:  To answer Your Honor's question,
 6   document 206, the order from Judge Flynn, that is in
 7   relation to confidential informant number 2, the individual
 8   who was interviewed twice, who wasn't involved in the
 9   offense conduct charged in the second superseding
10   indictment.
11           THE COURT:  Who was not?
12           MR. GAMMONS:  Who was not.  Correct.
13           To the extent that Mr. --
14           THE COURT:  And that's the person that you still
15   don't want to disclose?
16           MR. GAMMONS:  That's correct.
17           THE COURT:  And so then if you turn to the
18   objection, is that objection off-centered to that
19   confidential informant?
20           MR. GAMMONS:  It is, Your Honor.  On page 5 of
21   that order, the --
22           THE COURT:  5 of the order?
23           MR. GAMMONS:  Sorry.  On page 5 of the objection.
24           THE COURT:  Yes.
25           MR. GAMMONS:  The block text indicated by
```

1    paragraph 32, that is not a reference to confidential

2    informant number 2.

3              THE COURT:  That's 1?

4              MR. GAMMONS:  That's 1.

5              THE COURT:  Whose name they already know.

6              MR. GAMMONS:  Yes, ma'am.

7              THE COURT:  All right.  I'll come back to that.

8              It looks like the objection is moot, is what

9    you're telling me.

10             MR. GAMMONS:  Your Honor, my reading of the

11   objection is that the -- because CI number 2 knows of some

12   of the structure, it appears to me that Dr. Doss has

13   included the information about confidential informant number

14   1 just as context.

15             THE COURT:  And so this CI 15923 is 2?

16             I'm sorry.  CI 15093 is 1.

17             MR. GAMMONS:  Yes, ma'am.

18             THE COURT:  And CI 15923 is identified?

19             MR. GAMMONS:  Yes, ma'am.

20             THE COURT:  And CI 15093 has knowledge that is not

21   at all implicated in the conspiracy to commit murder in aid

22   of racketeering?

23             MR. GAMMONS:  Correct, Your Honor.

24             THE COURT:  He or she wasn't a racketeer, he or

25   she wasn't part of any of the means that are identified in

1    that offense?

2            MR. GAMMONS:  No, ma'am.

3            THE COURT:  And, Mr. Vitier, you can't add

4    anything further to this discussion?

5            MR. VITIER:  No, Your Honor.

6            THE COURT:  The only other pending motion is the

7    motion for continuance; is that right?

8            MS. BORGHETTI:  Yes, Your Honor.

9            THE COURT:  And as I understand it, Ms. Borghetti

10   is the only one asking for a continuance through

11   two thousand -- into 2020, everyone else wants a continuance

12   but not necessarily that long a continuance; is that right?

13           MR. BROWN:  Yes, Your Honor.

14           MR. VITIER:  Yes, Your Honor.

15           THE COURT:  Mr. Wise?

16           MR. WISE:  Yes, Your Honor.  Yes, that's correct,

17   Your Honor.

18           THE COURT:  So for the people who don't want to

19   wait until 2020, does somebody want to tell me when they

20   believe a sufficient continuance would place the trial?

21           MR. BROWN:  Yes, Your Honor.  I think we could be

22   ready by July.

23           MR. WISE:  Your Honor, I agree we could be ready

24   by July; however, I have a trial currently scheduled from

25   June 24th through July 19th, it's in State Court, but it is

1  a fairly old capital case and I know the Court and the State

2  are anxious to get that one to trial.

3         THE COURT:  Mr. Vitier, do you know the answer to

4  that question?

5         MR. VITIER:  Yes, Your Honor.  He said the

6  earliest he could be conceivably ready to go is August.

7         THE COURT:  When is the Government ready?

8         MR. GAMMONS:  The United States would be ready by

9  July, Your Honor.

10         THE COURT:  Sooner than July or only in July and

11  after?

12         MR. GAMMONS:  I believe the United States could be

13  ready as early as May.

14         THE COURT:  All right.  And it's still anticipated

15  that this will be three weeks from the Government's side of

16  the case, and how long do the defendants believe the defense

17  side of the case will take?

18         MR. BROWN:  I don't expect any additional time

19  from Mr. Robinson, Your Honor.

20         MS. BORGHETTI:  Possibly two days with

21  Mr. Mencher.

22         MR. VITIER:  Same, Your Honor.

23         MR. WISE:  Probably one day for Mr. Cosimano.

24         THE COURT:  And, Mr. Vitier, you said how long?

25         MR. VITIER:  Two days, Your Honor.

 1          THE COURT:  So we're talking about a four week

 2     trial if we count five trial days per week?

 3          MR. VITIER:  Yes, Your Honor.

 4          THE COURT:  If you count four trial days per week,

 5     we're talking about a six week -- five and a half week

 6     trial; is that right?

 7          MR. BROWN:  Yes, Your Honor.

 8          Your Honor, I'm already on the Court's docket for

 9     a date certain beginning the last couple days of April, it's

10     the May docket, with Dr. Duldulao's case, so I know I'm

11     already set for almost all of May with this Court in that

12     trial, so the reason I suggested July was to give me some

13     time to transition from that trial to this trial.  If

14     I didn't have Dr. Duldulao, I could be ready in June.

15          THE COURT:  And, Ms. Borghetti, are you available

16     in August?

17          MS. BORGHETTI:  Yes, I am, Your Honor.  I was

18     planning a vacation, but that's --

19          THE COURT:  And what are the parties' availability

20     in September?

21          MR. BROWN:  Your Honor, I have a conflict in

22     September.  I've been pre-booked for the entire month of

23     September and then I have a date certain set in front of the

24     Honorable Judge Jung with Natalie Adams for --

25          MS. ADAMS:  October 15th.

```
1            MR. BROWN:  -- October 15th.  He was kind enough
2   to give me the first couple weeks of October to get ready
3   for that trial, and that trial I believe will take us
4   through end of November, maybe into December.
5            MR. GAMMONS:  The United States would be available
6   in September, Your Honor.
7            THE COURT:  This is a pleasure trip in September?
8            MR. BROWN:  September, I've been -- yeah, it's an
9   organization --
10           THE COURT:  Yes?
11           MR. BROWN:  -- that -- yes.
12           THE COURT:  Thank you.
13           MR. BROWN:  In the sense that it's -- I'm actually
14  being hired and paid to do this.  I'm actually a guide for
15  an organization.  So it's not exactly as if I'm -- just a
16  regular trip, I've actually been hired and an organization
17  has paid me and counted on me to guide people up a mountain.
18           THE COURT:  Well, it looks like the best time for
19  the Court to try this case on that type of schedule would
20  begin July 29th and run through the month of August.
21  I doubt it will take that long to try this case, but to be
22  on the safe side for calendaring purposes the Court sets
23  this case on July 29th on a date certain.
24           I try cases four days, that gives me and the
25  parties time to recover on Friday, and I think that's a
```

1  period where there are no Monday holidays, so we would

2  intend to go July 29th through August 29th to try this case.

3          Is there any anticipation of any other defendants

4  entering pleas at this time?

5          MR. WISE:  No, Your Honor, not on behalf of

6  Mr. Cosimano.

7          MS. BORGHETTI:  Not on behalf of Mr. Mencher,

8  Your Honor.  He's going to trial.

9          THE COURT:  Mr. Brown and Mr. Vitier, you don't

10 know yet?

11         MR. BROWN:  Your Honor, we have -- I would say we

12 have had some discussions with the Government, but we're not

13 at a point where we would say we're pleading, so --

14         MR. VITIER:  Same, Your Honor.

15         MR. BROWN:  My only request, Your Honor, just for

16 docketing purposes, I know the Government intends to

17 supersede, if they would just perhaps give us sufficient

18 time if they do supersede, obviously not a month or two

19 before, but if they could give us some sufficient time

20 before trial on a superseding indictment, that would be

21 appreciated.

22         THE COURT:  Well, what -- why not?  When do you

23 anticipate superseding?

24         MR. GAMMONS:  Your Honor, to flesh that out,

25 I spoke to Mr. Brown this morning.  I'm going to send

1  Mr. Brown's client a plea offer.  If he doesn't accept we

2  will supersede adding a drug quantity weight with regard to

3  his client.  All the other information would remain the

4  same.  All the other discovery would remain the same.

5          THE COURT:  And so when would you supersede in

6  advance of trial?

7          MR. GAMMONS:  I plan on having the plea agreement

8  out to him next week.  It will have a 30 day deadline for

9  him to reply to, and we would supersede immediately after.

10          MR. BROWN:  That would be acceptable, Your Honor.

11  Thank you.

12          THE COURT:  All right.  So can anyone else here

13  who has joined in this motion articulate a basis for the

14  disclosure of the remaining CI whose name is not disclosed

15  by the Government?

16          The Government did not respond to the objection.

17  Is there a reason for that?

18          MR. GAMMONS:  We -- the Government would rely on

19  the Judge's order and the Government's underlying motion.

20  The confidential informant number 2 has very, very little

21  knowledge about this --

22          THE COURT:  All right.

23          MR. GAMMONS:  -- about this conspiracy, and we

24  don't believe that he's relevant to the case.

25          THE COURT:  Anything else the parties need to

1  discuss with the Court with respect to the presentation of

2  the case, any outstanding issues, any anticipated issues?

3         MR. GAMMONS:  Not from the United States.

4         MR. BROWN:  Not from Mr. Robinson, Your Honor.

5         MS. BORGHETTI:  On behalf of Mr. Mencher,

6  Your Honor, we filed for a budget, and it has not -- we had

7  a meeting with the magistrate judge but we still have not

8  seen anything, and now -- my budget was premised on the

9  trial being in 2020, and I believe I addressed that with the

10 magistrate judge, and now with the Court setting this on the

11 July calendar --

12        THE COURT:  It's really the August calendar, but

13 it starts the last week in July.

14        MS. BORGHETTI:  Right.

15        In all honesty, Your Honor, after what I have

16 reviewed so far, I truly believe that it may be just

17 Mr. Cosimano and myself in trial, and with that said,

18 I understand the Court has set this on that August calendar,

19 but, you know, I just want my objection that I believe March

20 would be more realistic, because I truly believe that it

21 will only be Mr. Mencher and possibly Mr. Cosimano in trial.

22        THE COURT:  Well, if two -- if all the defendants

23 drop out except for Mr. Cosimano and Mr. Mencher, the Court

24 may revisit the trial date because it won't take that long

25 and we might be able to put it someplace else, but we sit

1   where we sit today on the record that we have.

2          I know that Judge Flynn is aware of the pendency

3   of the request for a budget.  I had intended and still do

4   intend to hear you outside the presence of the other

5   litigants with respect to the objections to the Court's

6   review of the CJA vouchers this morning at the conclusion of

7   this hearing, and that might address some of the concerns

8   with your budget.

9          Is there anything else?

10          MR. GAMMONS:  No, Your Honor.

11          MR. BROWN:  No, Your Honor.

12          MR. VITIER:  No, Your Honor.

13          MR. WISE:  No, Your Honor.

14          THE COURT:  No expert issues, no discovery issues,

15   everything is moving along swimmingly; is that right?

16          MR. BROWN:  Yes, Your Honor.

17          THE COURT:  All right.  Well, it looks like I'm

18   going to overrule the objection to the Magistrate Judge's

19   order on the disclosure of the confidential source.  I will

20   review it once more to see if I see anything that would

21   require the Court's review, but if what the Government is

22   telling me is true, that it has provided all of the

23   debriefing information as to the remaining CI and they are

24   not pursuing any aspect of that CI's knowledge in the

25   conspiracy offense, then that person is not involved in the

1  criminal activity and under binding precedent their

2  disclosure isn't warranted, and security is a concern in

3  this case for obvious reasons.

4          We are dismissed.  I will keep Ms. Borghetti here

5  for a minute in a sealed hearing on her CJA voucher.

6                    - - - - -

7          (Proceedings concluded at 10:45 a.m.)

8                    - - - - -

```
 1              C E R T I F I C A T E

 2

 3         This is to certify that the foregoing transcript

 4    of proceedings taken in a status conference in the United

 5    States District Court is a true and accurate transcript of

 6    the proceedings taken by me in machine shorthand and

 7    transcribed by computer under my supervision, this the 28th

 8    day of February, 2019.

 9

10

11                                   /S/ DAVID J. COLLIER

12

13                                   DAVID J. COLLIER

14                                   OFFICIAL COURT REPORTER

15

16

17

18

19

20

21

22

23

24

25
```